# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

REGINA STOUT,

    Plaintiff,

v.                                           No. 1:18-cv-01228-JCH-LF

CITY OF ALBUQUERQUE,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING REMAND

Plaintiff Regina Stout filed a complaint against the Defendant City of Albuquerque for state-law violations of the Fair Pay for Women Act, N.M. Stat. Ann. §§ 28-23-1 – 28-23-6 (FPWA), the Human Rights Act, N.M. Stat. Ann. § 28-1-7(A) (NMHRA), breach of an employment contract, and breach of the covenant of good faith and fair dealing. Defendant removed the case to federal court, citing section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA), under which claims requiring interpretation of a collective bargaining agreement (CBA) are reclassified as federal claims.

Plaintiff moved for an order remanding the case to state court pursuant to 28 U.S.C. § 1447 [ECF No. 9]. After carefully considering the motion, briefs, and relevant law, the Court grants Plaintiff's motion and remands the case to state court.

**I.    Factual Background**

Plaintiff resides in Bernalillo County and works as a Property and Evidence Technician for the City of Albuquerque (the City). *See* Pl.'s Complaint ¶¶ 1, 3, 24, Doc. 1-2 (Compl.). Plaintiff has been employed by the City continuously since November 6, 1999. *Id.* at ¶ 3. Although not mentioned in Plaintiff's complaint, Defendant points out the following undisputed facts in its response brief that provide helpful context to Plaintiff's motion. The position of Property and

Evidence Technician is within the bargaining unit represented by the American Federation of State, County and Municipal Employees, Local 3022, commonly referred to as the "M-Series." *See* Def.'s Resp. Br., Doc. 14 at 3. As an M-Series employee, Plaintiff's bargaining unit is covered by a collective bargaining agreement. *Id*.

Plaintiff started at the City of Albuquerque as a reservation clerk in the transit department. *See* Compl. at ¶ 19. On August 6, 2003, Plaintiff was promoted to the position of Property and Evidence Technician at a salary of $11.32/hour at Grade C-28, Step 2. *Id*. at ¶ 22. This position was reclassified as a Grade M-12, Step 3 position and Plaintiff's salary was increased to $12.97/hour on January 13, 2006. *Id*. at ¶ 24. Since August 5, 2017, Plaintiff has been paid $15.91/hour by the City. *Id.* at ¶ 27.

Plaintiff alleges that Defendant hired other male evidence technicians and handlers to the Evidence Unit with equal or less experience and qualifications than Plaintiff to perform the same or similar tasks. *Id*. at ¶ 58. For instance, Samuel Giron was a 311 Operator, an unclassified position, who was promoted to an Evidence Handler to a M-11, Step 8 at a rate of $18.74/hour. *Id*. at ¶ 62-65. City policies require that an unclassified employee moving into a classified position be treated as a new hire and placed as a M-11, Step 1 at $11.86/hour. *Id*. at ¶ 64. The City did not advertise the position Mr. Giron was hired for. *Id*. at ¶ 66. Mr. Giron was subsequently promoted to a Property and Evidence Technician on June 30, 2012 as a M-12, Step 6 at a pay rate of $22.48/hour but that classified position was not advertised. *Id*. at ¶ 67-68. The City was paying Giron $23.28/hour as of August 16, 2016. *Id*. at ¶ 69.

Another male employee, Clifford Hilliard, was hired as a property and evidence handler, M-12, on November 20, 2010. *Id*. at ¶ 72. Mr. Hilliard was hired for the position after the City cancelled an advertisement on November 5, 2010 for the position of "police property and evidence handler," a M-12 position. *Id*. at ¶ 71. Mr. Hilliard was promoted to a M-11, Step 4 at $16.32/hour

on January 9, 2015 and promoted to M-12, Step 4 on July 25, 2015 with a rate of pay of $18.52/hour. *Id*. at ¶ 73, 75. As of August 16, 2016, Mr. Hilliard was paid $19.18/hour. *Id*. at ¶ 76.

Matthew Segura was hired by the City on October 4, 2003 as a Telecommunications Operator I. *Id*. at ¶ 83. Mr. Segura was allegedly hired as an Evidence Technician, M-11, Step 6 on September 8, 2012 but at the time of his hiring, the City did not advertise this classified position. *Id*. at ¶¶ 77, 78. Plaintiff alleges that Mr. Segura was not qualified for this position at the time of his hiring. *Id*. at ¶ 84. From August 4, 2014 to August 18, 2014, the City advertised the position of Police Property and Evidence Technician M-12 internally for City employees only, and received 37 applications. *Id*. at ¶ 79. The City promoted Mr. Segura to Property and Evidence Technician as an M-12, Step 6 at a pay rate of $22.48/hour on September 20, 2014 despite not possessing the basic qualifications for the position. *Id*. at ¶¶ 82, 84. As of August 16, 2016, the City was paying Mr. Segura $23.28/hour as of August 16, 2016. *Id*. at ¶ 85.

James East was employed by the City as a M-12, Step 1 on August 4, 2008 and after probation he became a M-12, Step 2 and compensated at $14.39/hour. *Id*. at ¶ 86. Later, Mr. East left the Evidence Unit for another position at the City. *Id*. at ¶ 87. From June 11, 2015 to June 25, 2015, the City advertised the position of Police Property and Evidence Handler M-11 and on August 22, 2015, Mr. East returned to the Evidence Unit on an administrative transfer as an M-11, Step 4 and was compensated at $16.32/hour. *Id*. at ¶ 88, 89. Mr. East was allegedly promoted to an M-12, Step 4, and is currently paid $19.37/hour. *Id*. at ¶ 91.

Mike Monette was employed by the Albuquerque Police Department from November 2009 to December 2016 as a specially trained police officer. *Id*. at ¶ 92. From February 14, 2015 until February 4, 2017, the City listed his employment as "layoff" and after he was listed as "recall." *Id*. at ¶ 93. On February 4, 2017, the City allegedly employed Mr. Monette as an Evidence Technician as an M-11 and was paid $20.73/hour. *Id*. at ¶ 94. At the time of Mr. Monette's hiring, the City

did not advertise the classified position and Mr. Monette did not possess the necessary requirements for the position of Evidence Technician at the time he was hired. *Id*. at ¶ 96.

In March 2015, Plaintiff applied to a Police Property and Evidence Supervisor E-15 position and was allegedly passed over by a less qualified candidate, James Kaplan, based on gender-based discrimination against her. *Id*. at ¶¶ 100, 104, 105, 109, 114. During her interview for the position, City employees who interviewed her were rude, demeaning, and condescending. *Id*. at ¶ 197. When she asked Mr. Dodge to clarify a question, he responded in a slow, deliberate manner and said, "Let me repeat [the question] in a way you will understand." *Id*. at ¶ 106.

Further, Plaintiff alleges she has more experience that the current Police Property and Evidence Supervisor, Michael Sullivan. *Id*. at ¶¶ 122-128. Plaintiff alleges that the City pays Mr. Sullivan $25.87/hour. *Id*. at ¶ 128. In August 2016, the City raised the hourly pay rates of Hilliard, Giron, and Segura, all the male members of the Evidence Unit, but she was not given a raise. *Id*. at ¶ 131. Plaintiff alleges that this pay raise was a violation of City personnel rules and policies and Merit System Ordinance. *Id*. at ¶ 130. When she asked Mr. Sullivan about a pay raise, he asked Plaintiff, "why do you need a raise if your husband is a sergeant?" *Id*. at ¶ 132.

Plaintiff discovered in June 2016 that the City paid male hires more than her. *Id*. at ¶ 134. On December 29, 2016, she brought her concern to the attention of the AFSCME union, and the union submitted a prohibited practice complaint (PPC) to the Labor Management Relations Board. *Id*. at ¶ 135. The city labor board accepted the PPC and assigned it a number. *Id*. at ¶ 136. The City responded to the complaint with an answer. *Id*. at ¶ 138. Further, Plaintiff alleges that the Equal Employment Opportunity Commission found probable cause against the City and referred to the Department of Justice its findings that the City violated the federal Equal Pay Act. *Id*. at ¶ 147.

According to Plaintiff, the City's personnel policies regarding hiring are robust and pay rates are not the result of a seniority system or merit system or collective bargaining agreement.

4

*Id*. at ¶ 55. She alleges that Defendant's policies require that vacant positions will be filled with the most qualified candidates, and all classified vacancies will be advertised to city employees with limited exceptions. *Id*. at ¶ 49. She also alleges that any pay increase above a normal promotional process requires detailed written justification to the Human Resources Director and approval by the Chief Administrative Officer. *Id*. at ¶ 53. Further, she alleges the policies prohibit discrimination on the basis of sex. *Id*. at ¶ 54.

Plaintiff asserted statutory claims under New Mexico's Fair Pay for Women Act and Human Rights Act, and common law claims for breach of an employment contract, and breach of the covenant of good faith and fair dealing. *Id*. at ¶¶ 151-182.

## II.     The Parties' Arguments

Defendant filed a Notice of Removal, claiming federal jurisdiction based on section 301 preemption because of the need to interpret the CBA to resolve Plaintiff's claims. *See* Notice of Removal at ¶ 4. Defendant argued that Plaintiff's claims are inextricably intertwined with, and required a detailed analysis of the CBA. *See* Def.'s Resp. Br. at 6, Doc. 14. Specifically, Defendant argues that analyzing the CBA is required to determine wages "in terms of equal pay and disparate treatment." *Id*. at 7. Defendant further contends that it is necessary to analyze the CBA to determine if Plaintiff exhausted all her administrative remedies for her breach of contract claim. *See id.* at 7. Defendant believes that Plaintiff is attempting to sidestep the grievance procedure to avoid federal preemption, which is not allowed. *Id*. at 8. In support of its various arguments, Defendant attached to its response brief pertinent portions of the CBA, the prohibited practice complaint filed by the union on Plaintiff's behalf, relevant Albuquerque ordinances governing labor-management relations, and the union's notice of withdrawal of the prohibited practices complaint. *See* Def.'s Exs. A-D, Doc. 14-1.

Plaintiff argued that as the master of her complaint, she made state law specific claims that are independent of the CBA. *See* Pl.'s Mot. for Remand at 4. Because she is not asserting claims for violations of contractual rights under the CBA itself, Plaintiff contends that preemption is unnecessary. *See id.* at 6. Where her complaint does refer to the CBA, such references were to show that she exhausted all of her administrative remedies, Plaintiff says, and not to assert state-law claims arising out of violations of the CBA. *See id.* at 7.

### III.   Standard of Review

"Congress has granted the federal courts removal jurisdiction to hear claims initially brought in state court if the federal district court could have exercised original jurisdiction." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (citing 28 U.S.C. § 1441(a)). Without diversity jurisdiction, a district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction. However, if the state claim is completely preempted by federal law, that claim is considered a federal claim arising under federal law. *See Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 n.4 (10th Cir. 2006); *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1137 (10th Cir. 2005) (noting that when complete preemption exists, the state claim becomes a federal claim and serves as a basis for removal jurisdiction). The doctrine of complete preemption has been repeatedly applied to state law claims which are preempted by § 301 of the LMRA. *See Felix v. Lucent Technologies, Inc.*, 387 F. 3d 1146, 1154-55 (10th Cir. 2004). However, "a federal defense, even one relying on the preclusive effect of a federal statute, is not enough to authorize removal to federal court." *Id.* at 1154 (citing *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003)). A district court must remand a case to state court whenever the district court lacks subject matter

jurisdiction over the case. *See* 28 U.S.C. 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## IV. Analysis

"Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985). Defendant argues that Plaintiff's state law claims are preempted by section 301 the LMRA, which controls disputes over collective bargaining agreements. Section 301 states, in relevant part: "Suit for violation of contracts between and employer and a labor organization representing employees in an industry affecting commerce...may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that Section 301 not only "governs claims founded directly on rights created by collective-bargaining agreements," but also gives federal courts jurisdiction over "claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar,* 482 U.S. at 394 (quotation marks omitted). Accordingly, all suits which fall under § 301 must be governed by federal law. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957) ("we conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."); *Teamsters v. Lucas Flour*, 369 U.S. 95, 103 (1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."). Because federal law exclusively controls in this area, any state law cause of action—whether it sounds in tort or contract—which depends on the meaning of a collective bargaining agreement is preempted. *See United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 369 (1990). "State law is thus preempted by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements." *Id.* at 368.

However, "not every dispute…tangentially involving a provision of a collective bargaining agreement is pre-empted by § 301." *Allis-Chalmers Corp.*, 471 U.S. at 211. Rather, state law claims are only preempted if they are not "sufficiently independent" of the collective bargaining agreement. *See United Steelworkers*, 495 U.S. at 369. The Supreme Court has stated the relevant inquiring in various ways. "[I]f the resolution of the state-aw claim *depends upon* the meaning of a collective-bargaining agreement, the application of state law... is pre-empted." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (emphases added). Put another way, section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, *independent* of a labor contract." *Allis-Chalmers Corp.*, 471 U.S. at 212 (emphasis added). Citing Supreme Court precedent, the Tenth Circuit has held that a state law claim is preempted by § 301 whenever evaluation of the claim is "inextricably intertwined with consideration of the terms of the labor contract." *Garley*, 236 F.3d at 1208.

According to the Tenth Circuit, "[t]he Supreme Court has outlined a key distinction between a claim that involves interpretation of CBA terms and one that involves mere reference to those terms, with only the former requiring complete preemption under § 301 of the LMRA." *Felix*, 387 F.3d at 1164. "When the parties do not dispute the meaning of the contract terms, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id*. (quoting *Livadas v. Bradshaw,* 512 U.S. 107 (1994)). "[T]he mere need to look to the [CBA] for damages computation is no reason to hold the state-law claim defeated by § 301." *Id.* (citations and internal quotation marks omitted). Defendant carries the burden of proof to establish § 301 preemption. *See Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1179 (11th Cir. 2010).

Plaintiff asserted claims for relief against the City for violations of the Fair Pay for Women Act, the New Mexico Human Rights Act, breach of an employment contract, and breach of

covenant of good faith and dealing. *See* Compl. ¶¶ 151-182. In order to determine whether these claims are preempted by § 301, the Court must analyze the elements of each of Plaintiff's claims and determine whether or not resolution of these claims depends upon an analysis of the CBA. In analyzing Plaintiff's claims, the Court may not consider any defenses the City may raise. *See Caterpillar*, 482 U.S. at 398-99 ("It is true that when a defense to a state claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule.").

      i. Fair Pay for Women Act

In Count I of Plaintiff's complaint she asserts a violation of the Fair Pay for Women Act. The FPWA states in relevant part that no employer shall discriminate between employees on the basis of sex by "paying wages to employees...at a rate less than the rate that the employer pays wages to employees of the opposite sex...for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions," N. M. Stat. Ann. § 28-23-3(A), unless the wage disparity is justified by one of three permissible reasons. Those three reasons are: (1) a seniority system; (2) a merit system; or (3) a system that measures earnings by quantity or quality of production. *Id.* § 28-23-3(A)(1)-(3).

"[F]ederal courts have indicated an inclination to analyze the FPWA under the rubric of the federal Equal Pay Act (EPA) given the statutes' similarity." *Dolin v. ThyssenKrupp Elevator Corp.,* No. CV 16-529 GBW/GJF, 2019 WL 452740, at *20 (D.N.M. Feb. 5, 2019). A plaintiff in an EPA suit must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male

9

employees were paid more under such circumstances." *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015). The FPWA makes an offending employer liable for unpaid wages, actual, treble, and punitive damages. *See* § 28-23-6(A)-(D). Equitable relief, including reinstatement and promotion, is also available to a successful plaintiff. *Id*. at § 28-23-6(A).

Concerning her FPWA allegations, Plaintiff's complaint alleges that the City violated the Act by paying her substantially less than male employees performing the same or similar tasks as other similarly situated employees in the Evidence Unit. *See* Compl. ¶ 152. She also alleges that she was passed up for a promotion for a lesser qualified male candidate based on gender discrimination. *Id*. ¶¶ 97-121. She contends that the City's pay disparity is unjustified by one of the three permissible reasons set forth in the FWPA – *i.e.* a seniority system, merit system, or system that measures earnings by quantity or quality of production. *Id*. ¶ 154. The City allegedly retaliated against her by continuing to compensate her a lower rate than the male hires. *Id*. ¶ 156. Finally, Plaintiff alleges that the City did not adequately investigate any of her complaints and attempted to conceal the FPWA complaint by claiming that it complied with the federal Equal Pay Act. *Id*. ¶ 157.

In *Lingle,* 486 U.S. at 401, the Supreme Court held that a state-law claim for retaliatory discharge under the Illinois Worker's Compensation Act for filing a worker's compensation claim was not preempted by § 301. The plaintiff in that case was injured and filed a worker's compensation claim requesting medical compensation under the Illinois Act. *Id.* The employer fired her, claiming that she filed a false worker's compensation claim. *Id*. However, the plaintiff asserted that she was fired for requesting worker's compensation. *Id.* at 402. Because the Illinois Act specifically created a cause of action for employees who were fired for filing worker's compensation claims, the employee sued in state court for retaliatory discharge under the Act. *Id.* The Supreme Court held that the plaintiff's retaliatory discharge claim was not preempted by §

301. *Id*. at 407. The elements of the state-law claim could be determined without interpreting the CBA. *Id.* Preemption under § 301 "sa[id] nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of [a CBA]." *Id*. at 409. Discussing *Lingle,* the Tenth Circuit described the plaintiff's claim under the Illinois Act as spared from preemption because her claim could be resolved by comparing the facts developed with the requirements of the Act without referring to the collective bargaining agreement. *See Johnson v. Beatrice Foods Co.,* 921 F.2d 1015, 1021 (10th Cir. 1990) (stating that the Act "create[d] an independent method of review. The facts alleged by the employee in *Lingle* fit specifically into the Act's prohibition of firing an employee for exercising rights under the Act.").

Here, *Lingle* teaches that Plaintiff's statutory FPWA claim does not require the Court to analyze the provisions of the CBA and thus is not preempted. Just as the Illinois Act created an independent state cause of action for an employee for exercising her rights under the Act in *Lingle*, the FPWA creates a cause of action against employers who pay employees less for the same work on the basis of sex. Such a statutory claim is not preempted by § 301 because the Defendant's obligations flow from the FWPA itself and not from the parties' labor agreement. Stated differently, the FPWA "sets out minimum standards for all employers; the rights it guarantees do not depend on the employee's relationship with a union or any contract the employee may have with her employer." *Cruse v. St. Vincent Hospital*, 729 F. Supp. 2d 1269, 1274 (D.N.M. 2010) (holding that § 301 did not preempt plaintiffs' wage violation claims under New Mexico's minimum wage act because the state law statutory claim was independent of the collective bargaining agreement). Plaintiff's FWPA claim does not raise "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," *Felix*, 387 F.3d at 1164, because Plaintiff is suing for her right not to

be paid less for the same work on the basis of sex under the FWPA. The Supreme Court has "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas,* 512 U.S. at 123.

Defendant argues that to establish her FPWA claim, a court will have to analyze the CBA "to determine the rate of pay for [the male Evidence Unit Employees], when they were paid and whether conditions arose under the CBA requiring different levels of pay." Def's Resp. Br. at 7. However, beyond Defendant's averment that Section Two of the CBA, "contains the controlling wage provision the Court would have to interpret," *id*. at 6-7, Defendant provides no analysis of that section, points to no specific terms in the CBA that the Court would need to resolve, and identifies no provision of the CBA that is in dispute. "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124.

Second, Defendant's argument overlooks the factual questions inherent in Plaintiff's prima facie case of wage discrimination under the FPWA that do not require an interpretation of the CBA. Plaintiff's FPWA claim requires her to prove that she performed substantially equal work to male employees considering the skills and responsibilities of the job, that her employment was basically the same that that of her male counterparts, and that she was paid less. Defendant's alleged practices concerning hiring or promoting other male evidence technicians and handlers with equal or less experience and qualifications than Plaintiff to perform the same or similar tasks raise a number of "purely factual questions" about the conduct of the parties that do not require the Court to interpret the terms of the CBA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994). This is especially true in light of Plaintiff's allegations that Defendant violated its own personnel and hiring policies and that its pay disparity was unjustified by one of the three

permissible reasons set forth in the FWPA. Such allegations will be resolved not by consulting the CBA, but by comparing the facts developed with the requirements of the FWPA to determine if the statute was violated. As for Defendant's contention that the CBA dictates "whether conditions arose … requiring different levels of pay," for male employees, Defendant simply identifies no provision of the CBA that speaks to whether the alleged pay disparity between Plaintiff and her male counterparts was due to varied levels of experience between the Plaintiff and her male counterparts, etc. Again, these notably "factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." *Lingle*, 486 U.S. at 405-407.

The Court does not find persuasive the case cited by Defendant, *Mowry v. United Parcel Service*, 415 F.3d 1149, 1157 (10th Cir. 2005), to support its preemption argument. In *Mowry*, the plaintiff made a wages and compensation claim that "alleged that his employer shorted his checks and he was discharged because he complained to his employer about his inadequate compensation." *Id*. The court held that his claim was preempted because the CBA expressly "assure[ed] full payment for all hours worked and specifically addresses rates of pay, computation of time worked, credit for certain delays that occur through no fault of the employee, and procedures for obtaining full payment of wages." *Id*. Unlike the plaintiff in *Mowry*, Plaintiff asserted a right created by New Mexico law. Plaintiff has alleged that she is being paid less than other less qualified men for the same work and that those pay scales were unjustified under the exceptions outlined in the FWPA. Plaintiff remains free to enforce her separate, non-negotiable state law right not to be paid less because of her sex.

To the degree that an analysis of the CBA is required, it would bear on Defendant's defense to Plaintiff's claim. However, "[t]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded

complaint rule." *Caterpillar Inc.*, 483 U.S. at 398-99. Moreover, if the CBA contains information to determine damages, the fact that a CBA may "contain information such as rate of pay ... that may be helpful in determining damages," provides no basis for preemption. *Lingle*, 486 U.S. at 413, n. 12. "*Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to 'look to' the collective bargaining agreement for damages computation is no reason to hold the state law claim defeated." *Livadas*, 512 U.S. at 125. In sum, Plaintiff's FPWA claim is not preempted.

    ii. <u>New Mexico Human Rights Act</u>

  Much the same analysis applies to Count II of Plaintiff's complaint, her assertion that Defendant violated the New Mexico Human Rights Act. The NMHRA states that it is unlawful discriminatory practice for an employer to "refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of … sex." N.M. Stat. Ann. § 28-1-7A. Plaintiff alleges that the City discriminated against her by not advertising a classified position, by engaging in demeaning behavior during her interview for the position of Police Property and Evidence Manager and by rejecting her application in favor of an unqualified male applicant. *See* Compl. at ¶ 162. Plaintiff argues that she referred to the CBA in order to show the Court that she exhausted all administrative remedies relevant to her claims.

  Similar to Plaintiff's FPWA claim, Plaintiff's statutory NMHRA claim does not require an analysis of the provisions of the CBA and thus is not preempted by § 301. This Court squarely held in *Benavidez v. Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1073 (D.N.M. 2016) that § 301 did not preempt a plaintiff's sex discrimination claim under the NMHRA. In *Benavidez* the plaintiff alleged, among other things, that "the Defendants discriminated against her by forcing her from her [job] position … and placing her in a new job … where she was unlikely to succeed because

14

of her age and sex," in violation of the statute. *Id*. Citing *Lingle,* the Court held that her NMHRA claim was not preempted because "the right not to suffer discrimination in employment decisions based on age or sex is independent of the question whether the Defendants violated the CBA." *Id*. Much the same is true here. Plaintiff's NMHRA claim arises from non-negotiable state rights that are independent from the CBA. In filing her lawsuit under the NMHRA, Plaintiff asserted independent statutory rights granted by New Mexico. Other federal courts are in accord. *See Mendoza v. Sysco Food Servs. of Arizona, Inc*., 337 F. Supp. 2d 1172, 1180 (D. Ariz. 2004) (plaintiff's claims based on Title VII not preempted by section 301 because the action did not arise from the CBA but out of protection of Title VII against discrimination based on national origin); *Detabali v. St. Luke's Hosp*., 482 F.3d 1199, 1202 (9th Cir. 2007) (plaintiff's California Fair Employment and Housing Act claim for employment discrimination and retaliation based on national origin, the California equivalent to the NMHRA, not preempted by Section 301 because the resolution of the central issue, whether the employer discriminated against plaintiff in applying the agreement, did not depend on interpretation of the CBA); *Klausen v. Warner Bros. Television*, 158 F. Supp. 3d 925, 930 (C.D. Cal. 2016) (plaintiff's FEHA claim based on age discrimination not preempted by section 301 because FEHA establishes nonnegotiable state-law rights that cannot be altered by contract, including the CBA, and that the claims resolution did not require a court to interpret the terms of the CBA).

In arguing for preemption, Defendant contends that by withdrawing her prohibited practice complaint, Plaintiff failed to exhaust the grievance procedures established in the CBA. Plaintiff disputes this characterization, calling it "false" and asserts that nowhere does her complaint allege that she "withdrew her PPC." Pl.'s Reply Br., Doc. 17 at 8. Defendant responds that this factual dispute – whether Plaintiff completed the grievance procedures as required by the CBA – necessarily is a matter of federal contract interpretation such that § 301 preempts Plaintiff's

NMHRA claim. *See* Def.'s Resp. Br. at 8 ("[t]he presence of a dispute around the use of the [CBA] grievance procedures indicates the presence of claims that are directly related to the interpretation of the CBA, therefore the case should be completely preempted."). However, Defendant's argument that federal contract interpretation resolves whether Plaintiff complied with the grievance procedure is a defense. Once again, "[t]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 398-99. Accordingly, Plaintiff's NMHRA claim is not preempted by § 301.

### iii. Breach of Contract Claim

In Count III of Plaintiff's complaint, she asserts that Defendant breached a contract for employment. Under New Mexico law, a contract is a legally enforceable set of promises that can only be legally enforceable if there is an offer, acceptance, consideration, and mutual assent. *See* NMRA UJI 13-801. A material breach of contract for failure to perform occurs when a party "fails to do something that is so important to the contract that the failure to perform that obligation defeats an essential purpose of the parties in making the agreement." NMRA UJI 13-823.

In her breach of contract claim, Plaintiff's complaint does not refer to the CBA. Rather, Plaintiff alleges that an employment contract was created by Defendant's personnel rules and policies and the Merit System Ordinance. *See* Compl. at ¶ 166. She alleged that the Defendant did not follow the guidelines for promotions and wages as outlined in those documents, resulting in Plaintiff being deprived an equal opportunity for promotion and wages compared to male hires. *Id.* at ¶¶ 167, 172. Plaintiff additionally complained that she was treated unfairly under the standards set forth in these documents and that the Defendant "failed in its duty to follow its own policies." *Id.* at ¶¶ 171, 173. Finally, Plaintiff alleged that she suffered damages as a result of defendant's bad faith and disregard for her employment rights. *Id.* at ¶ 177.

The Court starts by examining whether Defendant's personnel rules and policies and the Merit System Ordinance created a contract independent of the CBA for § 301 preemption purposes. The Tenth Circuit's decision *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001) provides guidance. There, the court examined whether Sandia Corporation's published personnel policies and procedures found in its code of ethics, personnel policies, and director's memo created an implied contract. The court, recognizing that a plaintiff covered by a CBA may assert independent state law contract rights, "so long as the contract relied upon is not a [CBA]," held that the standards cited by the plaintiff were not independent from the CBA and therefore the plaintiff's breach of contract claim was preempted. *Id.* at 1210. They were instead "inextricably intertwined" and "intended to be read in harmony with the CBA" because the documents referred to the CBA for rules governing discipline of unionized employees and therefore an analysis of the CBA would be required to resolve the claim. *Id.* at 1210-11 (citing *Caterpillar Inc. v. Williams*, 482 U.S. at 396).

Here, the Court cannot conclude from the record whether the Merit System Ordinance and personnel rules are linked to the CBA. Those documents are not in the record. While Defendant did provide the Court with portions of the CBA and selected excerpts of the City's ordinances governing labor-management relations, Defendant did not submit for review the specific Merit System Ordinance and personnel rules on which Plaintiff relies. Thus, all the Court has before it is Plaintiff's complaint. And from the face of that complaint, it makes no reference whatsoever to the CBA in the breach of contract count. Plaintiff's claim is predicated entirely on Defendant's alleged breach of the duties imposed by the Merit System Ordinance and personnel rules. Not being in the record, the Court is unable to examine whether the standards set forth in the documents

Plaintiff relies on are independent from the CBA. Plaintiff has therefore asserted an independent state-law claim for breach of contract that is not preempted.[1]

### iv. Breach of Covenant of Good Faith and Fair Dealing

In Count IV of Plaintiff's Complaint, Plaintiff asserts that Defendant violated the common law duty of good faith and fair dealing, which imposes an obligation on Defendant to not "do anything that [would] injure the rights of the other to receive the benefit of their agreement." *Henning v. Rounds*, 2007-NMCA-139, ¶ 24, 142 N.M. 803, 808, 171 P.3d 317, 322. Specifically, Plaintiff alleges that during her employment with the City she worked with the expectation that the City would act in good faith and that all employees would be treated equally. *See* Compl. at ¶ 180. She further alleges that the City conducted its labor and employment practices to cause Plaintiff to be treated differently than the male hires in pay and fair opportunities for employment and that this was a breach of its duty of good faith and fair dealing. *Id.* at ¶¶ 179-182.

Because Plaintiff's bad faith claim derives from Defendant's duty under the state-law contract described above, it is not preempted. *Cf. Allis-Chalmers Corp.*, 471 U.S. at 215-21 (claim for bad faith handling of an insurance claim under a disability plan was preempted because the disability plan derived from a collective bargaining agreement and thus the insurer's obligation to timely handle claims required an analysis of the agreement).

---

[1] The only citation to (and inclusion in the record of) what appears to be the Merit System Ordinance occurs in Plaintiff's response brief to Defendant's 12(b)(6) motion. *See* Pl.'s Resp. Br. at 11-12, ECF No. 15 (citing Pl.'s Ex. 5). The ordinance states that it governs the hiring, promotion and discharge of city employees. *See* Albuquerque, N.M., Code ch. 3, art. 1, § 3-1-1. However, the specific ordinance that Plaintiff cites to, titled "The Grievance Resolution Procedure," is to support a completely different part of Plaintiff's argument and seems to have no relation to her breach of contract claim. Again, because the Court is not in possession of the documents Plaintiff's breach of contract claim relies upon, the Court cannot conclude that they are intertwined with the CBA such that the breach of contract claim is preempted.

## V. Conclusion

Plaintiff's claims for violations of the Fair Pay for Women Act, the New Mexico Human Rights Act, breach of contract, and for breach of the covenant of good faith and fair dealing are not preempted. Because the Court lacks removal jurisdiction over Plaintiff's state-law claims, this case is remanded to state court pursuant to 28 U.S.C. § 1447.

**IT IS THEREFORE ORDERED that** Plaintiff's Motion to Remand **[ECF No. 9]** is **GRANTED** and that this case is **REMANDED** to the Second Judicial District Court of Bernalillo County, New Mexico.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT COURT JUDGE